DEARBORN INSURANCE COMPANY, Plaintiff-Appellee, v. INTERNATIONAL SURPLUS LINES INSURANCE COMPANY, Defendant-Appellant.

First District (4th Division) No. 1—97—0724

Opinion filed September 23, 1999.—Rehearing denied November 23, 1999.

Bryan G. Schumann and Carol L. Johnson, both of Bollinger & Ruberry, of Chicago, for appellant.

Scott L. Carey and Anne L. Blume, both of Bates, Meckler, Bugler & Tilson, of Chicago, for appellee.

JUSTICE HALL[1] delivered the opinion of the court:

The parties to this action are two insurance carriers. Plaintiff, Dearborn Insurance Company (plaintiff), issued a claims-made insurance agents' and brokers' professional liability policy to James Klein Insurance Service, Inc. (Kleinco), for the policy period of December 31, 1989, to December 31, 1990 (hereinafter plaintiff's policy). Endorsement 3 to plaintiff's policy amended the named insured to include Canon Insurance Service (Canon) and the Billco Partnership (the partnership), a partnership comprised of two general partners—Kleinco and Canon. Defendant, International Surplus Lines Insurance Company (defendant), issued a claims-made insurance agents' and brokers' professional liability policy to Canon for the policy period of March 15, 1991, to March 15, 1992 (hereinafter defendant's policy). Defendant's policy had a $15,000 deductible.

Plaintiff filed this action seeking reimbursement from defendant for costs incurred in defending and indemnifying the sole mutual insured, Canon. The parties filed cross-motions for summary judgment. The circuit court granted plaintiff's motion for summary judgment and denied defendant's cross-motion for summary judgment. Defendant filed a motion for reconsideration and plaintiff filed a motion to enforce the judgment. Following argument on these motions the circuit court denied defendant's motion for reconsideration and

---

[1]Justice Daniel J. McNamara participated in this case prior to his death. Justice Shelvin Louise Marie Hall is substituted on the panel to participate in the disposition of this case.

granted, in part, plaintiff's motion to enforce the judgment. Defendant appeals. For the reasons that follow, we affirm.

In 1985, Canon and Kleinco were California corporations that had formed the Billco partnership. As general partners, Canon and Kleinco operated a property and casualty insurance brokerage business. Although Canon and Kleinco were partners in the sense of shared ownership, the office managed by Kleinco was managed separately from the office managed by Canon and each office had its own book of business and client base.

In 1987, the partnership was dissolved pursuant to an agreement of partnership termination (the dissolution agreement). The dissolution agreement provided, *inter alia*: (1) that Kleinco would assume all liabilities and obligations of the partnership, except for liabilities and obligations arising as a result of actions or inactions of Canon not known by Kleinco at the time of execution of the termination agreement; (2) that Kleinco would indemnify Canon in the event of any suit arising out of any alleged acts or omissions by Kleinco while acting on behalf of the partnership; and (3) that Kleinco would continue to maintain insurance coverage for the partnership for the benefit of Canon through 1992.

During 1985 and 1986 Kleinco handled the account of Sundance Financial, Inc. (Sundance). In December 1990 Sundance filed an action in California state court against its insurance agent, GAF Insurance Services, on the basis of negligence and breach of contract for the agent's alleged failure to procure the proper excess coverage (Sundance I). On November 28, 1990, Kleinco forwarded to plaintiff correspondence it had received from GAF indicating its intent to file a third-party action against Kleinco in the Sundance litigation. This letter did not mention Canon. Plaintiff acknowledged receipt of Kleinco's notice of potential claim. On November 7, 1991, Kleinco was served with a cross-complaint for indemnity, contribution, and declaratory relief in Sundance I naming both Kleinco and Canon, but not the partnership. In a letter dated November 7, 1991, Kleinco requested that plaintiff defend both Kleinco and Canon in this matter. Plaintiff defended both Kleinco and Canon, but no indemnity payment was made by plaintiff on behalf of either in Sundance I.

On November 14, 1991, William Cooper, Canon's insurance broker, sent a letter to defendant enclosing a copy of the cross-complaint in Sundance I. The first paragraph of the letter summarized the litigation and the surrounding circumstances. The second paragraph discussed potential other insurance Cooper thought might be available in connection with this claim. The third paragraph stated:

"As you can see from the November 7th letter from Pam Davis

to their E&O carrier (Virginia Surety), Klein's office is asking their carrier to respond on behalf of James Klein Insurance and Canon Insurance. Therefore, at this time, it's probably best that you accept this as a possible claim but not something in which you need to take an active role unless, of course, your claims people disagree. In this regard, I await your feedback."

Upon receipt of this correspondence, defendant opened a claim file and established a reserve. Defendant did not admit or deny coverage and did not file a declaratory judgment action to determine its rights and/or obligations to Canon in connection with Sundance I. Defendant did not undertake the defense of Canon in Sundance I and rejected plaintiff's demands to share in the costs of defending Canon.

On September 4, 1992, Sundance filed a second action naming Kleinco and the partnership as defendants (Sundance II). Sundance I and II were consolidated. Plaintiff also defended and indemnified Kleinco and the partnership in connection with Sundance II. Plaintiff made a $25,000 indemnity payment on behalf of Kleinco and the partnership to settle a portion of their liability in Sundance II.

On December 22, 1995, plaintiff filed a complaint for equitable contribution, equitable subrogation, and unjust enrichment based upon defendant's refusal to participate in the defense of Canon. Plaintiff sought to be reimbursed for defendant's portion of the defense expenses incurred on behalf of Canon in the Sundance litigation. Defendant denied any obligation to participate in Canon's defense, arguing that Canon had not tendered the defense to it.

After defendant filed its answer, but before discovery commenced, the parties filed cross-motions for summary judgment. Plaintiff argued that the matter was governed by California law, but that under either California or Illinois law, Canon had tendered its defense to defendant through the November 14, 1991, letter from Cooper to defendant. Therefore, defendant had a duty to defend Canon in the Sundance litigation. Defendant argued that Illinois law governed this matter. Relying on *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), defendant further argued that it did not have any duty to defend or indemnify Canon because Canon had chosen not to tender its defense in the Sundance litigation to defendant.

The circuit court concluded that California law applied to this matter. The circuit court concluded that the November 14, 1991, letter constituted a tender of defense to defendant and granted plaintiff's motion for summary judgment. The circuit court also ordered that plaintiff's right of contribution was 50% of any current or future defense costs and indemnity payments made by plaintiff on behalf of Canon.

Defendant filed a motion for reconsideration on December 6, 1996, and an amended motion for reconsideration on January 2, 1997. Attached to the amended motion were the affidavits of Mr. James G. O'Brien, a vice president of defendant; Mr. William Murray, Jr., the claims representative employed by defendant in connection with this matter; and Mr. Andrew M. Rosenfeld, the executive vice president of Canon.

Mr. Murray averred that the November 14, 1991, letter from Cooper was simply a notice of a potential claim, not a tender. According to Mr. Murray, Canon never requested that defendant defend or indemnify it in the Sundance litigation. Mr. Rosenfeld averred that it was Canon's specific intent not to tender the defense of the Sundance litigation to defendant and explained the various business reasons underlying that decision. He further stated that the November 14, 1991, letter from Cooper was meant only to notify defendant of a potential claim, not to tender the defense. Mr. Rosenfeld stated that Canon expected plaintiff to defend and indemnify it in the Sundance litigation. The circuit court considered the affidavits along with defendant's motion to reconsider.

Contemporaneously, plaintiff filed a motion to enforce the grant of summary judgment. Plaintiff sought a 50% contribution to the defense costs incurred and those to be incurred in the future in defending the Sundance litigation, as well as a 50% contribution to any indemnification paid by plaintiff in the Sundance litigation. Plaintiff argued that both Kleinco and Canon were sued as general partners and therefore had identical interests. Defendant argued that even if the court found defendant liable for a portion of plaintiff's costs in defending and indemnifying Canon, the entity insured by both plaintiff and defendant, the court could not require defendant to contribute to the cost of defending and indemnifying parties for which defendant did not provide insurance coverage. Defendant identified certain invoices that referred to work performed by plaintiff solely on behalf of Kleinco. According to defendant, plaintiff bore the burden of proving which, if any, costs were expended on behalf of Canon.

On January 15, 1997, the circuit court denied defendant's motion for reconsideration. On that date the court also granted in part plaintiff's motion to enforce the judgment, requiring defendant to share equally "in the cost to defend and indemnify in the underlying action," thus requiring defendant to pay 50% of all defense costs and indemnity payments made in the Sundance litigation.

On appeal defendant contends: (1) that the circuit court erred in finding that a notice of claim letter to defendant was sufficient to trigger a duty under defendant's policy to defend the insured in the

underlying litigation; (2) that the circuit court erred in finding that defendant had a duty to defend Canon in the underlying action because material questions of fact exist regarding the clear intent of the insured to have plaintiff, not defendant, defend them in the underlying litigation; (3) that even if the notice of claim letter is found to constitute a tender, the insured may revoke such a request; (4) that the circuit court erred in applying California law; and (5) that the circuit court erred in finding that defendant had an obligation to defend and/or indemnify noninsureds under its policy.

■ In the circuit court plaintiff argued that this case presented a conflict of laws situation because Illinois requires actual tender before an insurer's duty to defend arises, while California does not. Applying Illinois choice of law principles, plaintiff argued that California law should apply to this case. We find that this case does not present a conflict of laws situation. After our supreme court's decision in *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998), Illinois no longer requires a formal tender to trigger an insurer's duty to defend. Rather, as in California, an insurer's duty to defend arises when the insurer has actual notice of the suit against the insured. See *Bituminous Casualty Corp. v. Royal Insurance Co.*, 301 Ill. App. 3d 720, 704 N.E.2d 74 (1998); *Samson v. Transamerica Insurance Co.*, 30 Cal. 3d 220, 636 P.2d 32, 178 Cal. Rptr. 343 (1981); *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal. 4th 1, 900 P.2d 619, 44 Cal. Rptr. 2d 370 (1995). In the absence of a conflict, Illinois law applies as the law of the forum.

■ Because this is an appeal from an order granting summary judgment, we review the case *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992).

■ Defendant contends that the circuit court erred in finding that it had a duty to defend Canon in the Sundance litigation because Canon never tendered the defense to defendant. We find this case to be controlled by our supreme court's recent decision in *Cincinnati Cos. v. West American Insurance Co.*, 183 Ill. 2d 317, 701 N.E.2d 499 (1998). In that case, the supreme court considered whether an insurer's duty to defend its insured was triggered upon its receipt of actual notice of the suit against its insured, or whether the duty to defend is triggered only upon the insured's actual tender of its defense to the insured. The supreme court rejected previous appellate court decisions such as *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill. App. 3d 70, 599 N.E.2d 1311 (1992), which held that an insurer's duty to defend is triggered upon tender of a claim unless the insured is unsophisticated. The supreme court held: "We believe that the better rule is one which allows actual notice of a claim

to trigger the insurer's duty to defend, irrespective of the level of the insured's sophistication, except where the insured has knowingly foregone the insurer's assistance." *Cincinnati Cos.*, 183 Ill. 2d at 328. Actual notice is defined as " ' "notice sufficient to permit the insurer to locate and defend the lawsuit." ' " *Cincinnati Cos.*, 183 Ill. 2d at 329, quoting *Cincinnati Cos. v. West American Insurance Co.*, 287 Ill. App. 3d 505, 512 (1997), quoting *Federated Mutual Insurance Co. v. State Farm Mutual Automobile Insurance Co.*, 282 Ill. App. 3d 716, 726 (1996).

■ The record is clear that defendant had notice of the claim sufficient to trigger its duty to defend Canon. It is undisputed that by letter dated November 14, 1991, Canon put defendant on notice of the Sundance litigation. Enclosed with the November 14, 1991, letter was a copy of the complaint in the Sundance litigation. Because defendant had a copy of the actual complaint, there can be no question that defendant had notice sufficient to allow it to locate and defend the suit.

The issue then becomes whether Canon had "knowingly foregone" defendant's assistance in the Sundance litigation. In *Bituminous*, the court held that the insured had knowingly foregone the defendant's assistance where the insured had notified the defendant of the suit, but also had told the defendant that it would look solely to plaintiff for its defense. The insured specifically expressed the desire that the plaintiff provide the exclusive defense and coverage.

Canon gave defendant no such specific direction not to defend in this case. In its November 14, 1991, letter to defendant, Canon stated: "Therefore, at this time it's probably best that you accept this as a possible claim but not something in which you need to take an active role unless, of course, your claims people disagree." Canon did not direct defendant to refrain from participating in its defense; rather, Canon left the decision of whether to become actively involved in the defense of the Sundance litigation to defendant. There was no clear direction in the November 14, 1991, letter not to defend. Because we find that the November 14, 1991, letter is clear and unambiguous, we refuse to go beyond the four corners of that document and consider the affidavits and other documents submitted by defendant. See *Quake Construction, Inc. v. American Airlines, Inc.*, 141 Ill. 2d 281, 565 N.E.2d 990 (1990) (holding that where a document is unambiguous its meaning must be determined solely from the writing itself).

Relying on the decision in *Alcan United, Inc. v. West Bend Mutual Insurance Co.*, 303 Ill. App. 3d 72, 707 N.E.2d 687 (1999), defendant contends that even if the November 14, 1991, letter was a tender, Canon "deactivated" that tender through postnotice communications with defendant. Noting that an insured has a paramount right to

choose or not to choose an insurer's participation in a claim (see *Cincinnati Cos.*, 183 Ill. 2d 317; *Institute of London*, 234 Ill. App. 3d at 79), the court in *Alcan* held that insureds may deactivate coverage with a carrier previously selected for purposes of invoking exclusive coverage with another carrier.

There is simply no evidence in this record to suggest that Canon ever did so. Our supreme court has made it clear that an insured may knowingly forego the insurer's assistance and relieve the insurer of its obligations to defend by instructing the insurer not to involve itself in the litigation. *Cincinnati Cos.*, 183 Ill. 2d at 326. Canon never instructed defendant not to defend it in the Sundance litigation.

We find that defendant had actual notice of the Sundance litigation and that Canon did not knowingly forgo defendant's assistance in that matter. Thus, defendant had a duty to defend Canon.

Finally, defendant contends that the circuit court erred in ordering it to pay 50% of the total costs expended in defense of the Sundance litigation. Defendant contends that this ruling requires it to pay the defense costs of Kleinco and the partnership, entities it did not insure. Review of the allegations in the Sundance litigation reveals that Canon was sued as a general partner of the partnership. Identical allegations of negligence were made against Kleinco, Canon, and the partnership. There could be no distinction between the defense of Kleinco, Canon, or the partnership. We find that, based upon the allegations in the Sundance litigation, the circuit court correctly found that defense costs were to be divided equally between plaintiff and defendant.

Accordingly, for the reasons set forth above the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SOUTH and WOLFSON, JJ., concur.